# N. Y. SUPERIOR COURT.

## EDWARD A. EMERSON agt. CLARENCE M. ROOF.

*Real estate — When time not the essence of the contract — Specific performance — When plaintiff entitled to perform — When no right of action arises for commissions paid by plaintiff.*

The plaintiff, in April, 1883, through his agent and attorney, entered into a contract with defendant to purchase of the latter two pieces of real estate for $127,500, the purchaser to pay the broker's commissions, $1,275, upon the sale. The broker through whom the sale was made, who was not expressly employed by defendant, had given plaintiff's agent, without the knowledge or authority of defendant, a diagram on which was stated the width of one of the premises, but the contract was executed for the sale of the property by street numbers, nothing being then stated about a diagram. On the day prior to the execution of the contract, plaintiff had contracted to sell the same premises for $138,000, and paid $1,380 for the broker's commissions on such sale.

When, on the day fixed for closing the sale, defendant tendered a deed, it appeared that the width of one piece of property was four feet less than the dimensions shown upon the diagram, and plaintiff declined to accept the deed without a deduction for the deficiency, and sought by this action to recover the amount for brokers commissions paid by him, besides $2,500 paid on execution of the contract.

*Held*, that plaintiff, there being no fraud or mutual mistake, was bound by the contract, and time not being of its essence, is still entitled to perform it according to its terms.   If he fail to perform it, judgment should be for the defendant, as no right of action arises for the commissions, the $1,275 being received as a condition precedent to the execution of the contract, and the $1,380 having been paid in advance before plaintiff had any legal right to sell the property.

*Special Term, December*, 1883.

In the year 1879, Homer Morgan, a well known real estate broker, had the premises Nos. 34 Broadway and 69 New street for sale for James M. Motley, and subsequently for a Mr. Fielder.   In the early part of 1883, Morgan had an offer for the property, and through his clerk Jabez B. Hyde, opened and conducted negotiations with the defendant (who was dis- covered to be the party in interest) for the sale of the premises.

As a result of these negotiations Du Bois Smith (the agent and attorney of the plaintiff) and the defendant had several interviews, and a final offer of $127,500 net was agreed upon as the price to be paid for the property.   This proposi- tion, as explained by the evidence, meant that the pur- chaser was to pay the broker's commissions upon the sale. Hyde gave Smith a diagram upon which the premises No. 34 Broadway appeared as thirty-two feet one inch in width.   The defendant never authorized Hyde to issue it, and had no knowledge of its existence until after the execution of the contract of sale.   This contract, though dated April 20, 1883, at Smith's request, was executed on the following day for the sale of the premises, by street numbers, 34 Broadway and 69 New street.

On April 20, 1883, the plaintiff had contracted to sell the

premises to George H. Morris for $138,000, and paid $1,380 for the broker's commissions on such sale.

On the day fixed for closing the sale between the parties to this action, the defendant tendered a deed of the premises in question, by which it appeared that the width of the Broadway property was about four feet less than the dimensions shown upon the diagram. The plaintiff declined to accept the deed unless a proportionate deduction was made for such deficiency. This offer was not accepted, and plaintiff having amended his complaint upon the trial, now seeks to recover the amounts paid by him on account of his purchase, viz., $2,500 paid on execution of the contract, $1,275 commissions paid to Morgan, and $1,380 commissions paid to the broker upon the sale to Morris; in all, $5,155.

*Abram Wakeman,* for plaintiff.

*Alfred Roe,* for defendant.

LARREMORE, *J.* — The premises were in Morgan's hands for sale for some years before the defendant acquired any interest therein. It was not until the spring of 1883 that Morgan, upon the application of a purchaser, sought out the defendant and opened a correspondence with him upon the subject. This correspondence and the interviews between the parties finally resulted in the execution of the contract upon which this suit is brought. It might be said, in view of the evidence, that Morgan was as much the agent of one party as the other in effecting the sale. He was not expressly employed by the defendant. He met the inquiry of a purchaser by finding the owner of the premises and bringing them together. They made a contract, and his mission was ended. But conceding, as was insisted upon the trial, that he represented the defendant, his agency at the most was special in character, and the plaintiff in dealing with him was chargeable with notice of his special authority. He had no authority from the defendant to issue a diagram showing the dimensions of the property.

This was an act for which his alleged principal cannot be held responsible. But whatever representations may have been made, and even though the plaintiff was mistaken as to the dimensions of the property he purchased, yet in the absence of fraud or mutual mistake the contract of April 20, 1883, must control my decision. Before it was executed the plaintiff's agent, who was a lawyer by profession, requested that the dimensions should be inserted therein, to which the defendant replied that he did not know what the dimensions were except in a general way, and that he would sell "as 34 Broadway and 69 New street." Nothing was then said about a diagram. In this he is corroborated by the testimony of the attorney who drew the contract, while the testimony of the plaintiff and his attorney upon that point is purely negative in character. They do not recollect any such conversation.

Assuming, therefore, as the evidence warrants, that the plaintiff was bound by the contract, the question arises, is it still in force? Time was not originally of its essence, nor has it become so by subsequent notice (*Myers* agt. *De Mier*, 4 *Daly*, 343; *aff'd*, 52 *N. Y.*, 647). The plaintiff is still entitled to perform it according to its terms. It does not appear that the property has depreciated in value or that the defendant has sustained any loss by reason of its non-performance. He has received $2,500, for which he has given no equivalent. It would be inequitable for him to retain it unless the plaintiff absolutely and unconditionally refuses to perform.

No right of action arises for the commissions paid by the plaintiff. The $1,275 were received by Morgan as a condition precedent of the execution of the contract. The $1,380 were paid in advance before the plaintiff had any legal right to sell the property to Morris.

Under all the circumstances, I think the plaintiff should have another opportunity to save his $2,500, and if within twenty days after service of a copy of the judgment to be entered herein, he shall tender performance of the contract,

the same shall be performed according to its terms, subject to adjustment for interest and moneys expended properly chargeable upon the property, which, if not agreed upon, may be settled by a reference for that purpose. If the plaintiff fails to perform as above stated, then judgment is ordered for the defendant.